## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :

     vs.      :      **2:10-CR-00029-JS**

KENNETH SCHNEIDER      :

## *DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REVOKE DETENTION ORDER*

Defendant Kenneth Schneider comes before this Court PURSUANT TO 18 u.s.c. § 3145(b) seeking revocation of a detention Order and an Order setting the conditions of release. Magistrate Judge Sitarsky granted the government's Motion For Detention after a hearing on June 1, 2010, apparently because she concluded that no set of conditions could assure defendant's appearance at trial.[1]

Defendant is charged in a two-count indictment: Count One charges a violation of 18 U.S.C. § 2423(b) (traveling for the purpose of engaging in sex with a minor), and Count Two charges a violation of 18 U.S.C. § 2421 (transporting a person for criminal sexual contact). These allegations are defined as "crimes of violence" under the Bail Reform Act, id. § 3156(a)(4)(C), making detention possible under § 3142(e)(1),(f)(1)(A). Moreover, § 3142(e)(3)(E), establishes a rebuttable presumption in favor of detention if the government, at a hearing, establishes probable cause to believe the defendant committed the charged offenses. If the government raises the presumption, then "defendant bears the burden of

---

[1]     As of the filing of this Memorandum, no written Detention Order has been filed.

producing credible evidence that 'that he will appear and will not pose a threat to the community.'" *United States v. Jiminez*, 2007 U.S. Dist. LEXIS 50683 (E.D.Pa. 2007), citing *United States v. Carbone,* 793 F.2d 559, 560 (3d Cir. 1986). Once defendant comes forward with credible evidence to rebut the presumption, the Court must review the factors outlined in Section 3142(g) to determine whether the defendant has rebutted the presumption. If the defendant's evidence rebuts the presumption, then the government must carry the ultimate burden of proof on risk of flight and dangerousness.[2]

  While the Indictment establishes probable cause, this is not a case where the weight of the evidence is great. See, Section 3142(g)(2). This is not a wiretap case like this Court's decision in *Jiminez*. The government presents a case premised upon the allegations of a single complainant who claims that defendant repeatedly engaged in sexual misconduct in a home in Moscow from 1998 through at least 2001. We have produced a statement, attached to our Motion as Exhibit "A" from the housekeeper who was present every day in the Moscow apartment where defendant and the complainant lived while the defendant was working and the complainant was attending school.(See Statement of Kozyreva Ludmila Ivanovna). The housekeeper  lived across the hall, and had unfettered access to the home. She has provided a statement that describes an environment substantially inconsistent with

---

[2]  The government seems to focus on the risk of flight, and so will we here. However, we contend, and iterate here, that the there is no suggestion of ongoing dangerousness in this case alleging a single remote victim.

the government's portrayal of the defendant. Suffice to say that there is a substantial question as to whether the government will prove its allegations to a jury.

The Court should find that the defendant has rebutted the presumption of dangerousness, inter alia, because there is no allegation of ongoing misconduct or dangerous behavior. The complainant lives in Phoenix, AZ. Defendant has had no contact with the complainant for years, and there is no reason to believe that he will have any contact going forward. The defendant has no prior record of any kind, and has never been accused of committing a crime or injuring anyone, other than this single uncorroborated complainant.

Defendant's presentation will overcome the presumption that no condition of bail will assure the defendant's appearance. First, defendant must appear here to protect his future and his family's welfare. Defendant has retained counsel to defend the parallel civil allegations made against him, his parents and his sister. If he should fail to appear here, he is almost certainly putting his family on the path to financial ruin through a default judgment. Defendant intends to appear and to fight these allegations in this case and in the parallel civil case.

Second, while the government makes much of defendant's international travel, that travel is an integral part of his career for the last twenty years, and, when coupled with his voluntary return here, provides evidence that he is likely to return.

Prior to the initiation of this action, defendant was a very successful international transactions attorney. His abbreviated CV is attached hereto as Exhibit C. He is an honors graduate of the University of Michigan and of the University of Chicago Law School (where he served on the Law Review). He maintains a valid license to practice law issued by New York state, and lists thereon the London address where his international practice is principally based. He was employed by Wall Street law firms after graduation from law school, with an eventual concentration in Russian transactions and a residence in Moscow. He is employed by, and is a principal in Aurience, a group that provides international consulting on mergers and acquisitions and other transactions, with offices in London and Cyprus. He has traveled in the last year on business, to China and India.

There is no extradition from China. If this defendant was conscious of his own guilt, there would be no reason for him to have left China, traveled to Cyprus and continued doing business.

Defendant's travel for the last year suggests that he has community ties to this District, and supports the contention that he is likely to appear to exonerate himself. Defendant and his family received the first demand from the complainant's civil attorneys in July of 2008. The plaintiff's demand letter dated July 28, 2008, is an Exhibit. Mr. Schneider remained in the United States, cancelling various business trips overseas, until March 28, 2009, when he was advised by counsel to try to resume some normal life. His travel confirmation for March 29, 2009, is likewise an Exhibit. The government claimed at

4

the hearing before the Magistrate that defendant left because he knew charges were pending. That is false, and there is no evidence to support that contention.

Mr. Schneider first had an inkling of a criminal investigation after the plaintiff's suggested an ongoing investigation in an Answer to Interrogatory stating that "Investigation is continuing and will be enlarged after the initial deposition of Kenneth Schneider." These Answers were filed on or about November 21, 2009. Defendant then secured an Order from Judge Goldberg directing plaintiff's counsel to disclose the investigation, and separate criminal counsel was retained. The attached letter from Joseph D. Mancano establishes that Mr. Schneider's civil counsel moved diligently to learn about this investigation, and that criminal counsel offered to act on Mr. Schneider's behalf with the prosecutor. That offer was refused. All the while, we now know, the government was holding a sealed arrest warrant in this case, but never invited Mr. Schneider to return or surrender .

Third, defendant was released on bail in Cyprus and always appeared when wanted. The Opinion and Order entered in Cyprus is an Exhibit in this case. The bail posted in Cyprus was 50,000 euros.[3] Between March 292, 2010, when the bail was posted, and May 17, 2010, when he returned to Court to return to custody, Mr. Schneider was free to go anywhere he wanted. If he intended to flee, he was free to ride a bicycle in Turkish Cyprus,

---

[3]     The government makes much of the fact that the bail was posted "in cash." The defendant was arrested, and while in custody asked his company to get the bail money from the bank. The cash came from a Bank account maintained by Aurience, in Cyprus.

from which there is no extradition. He did not do so. Rather, he returned to Court in Cyprus on 5 separate occasions, including the last appearance when he knew he was going to be taken into custody and extradited.

Fourth, defendant attempted to return here voluntarily while released on bail. While on bail in Cyprus, the government revoked his passport. He requested, through counsel, issuance of special travel authorization to permit him to return to the United States to face these charges. That permission was refused, and a request for declamatory relief and an injunction directing the issuance of travel authorization was denied by Judge Sanchez on May 18, 2010. See, *Schneider v. Clinton,* No. 2:10-cv-02173-JS.

Fifth, defendant has strong historical ties to this District. He was born and raised here, he has always maintained a Pennsylvania driver's license, he is registered to vote here, and he owns a substantial portion of the family home here. His parents reside here, as do his 3 sisters. The factors outlined in Section 3142(g)(3) all suggest that defendant has strong community ties and is likely to appear when wanted.

Finally, we contend that the Schneider family's offer to post the $2 million dollars in unencumbered equity in that family home is strong, weighty, evidence that defendant is likely to remain here and fight these scurrilous accusations. This 10 acre property located at 832 Darby Paoli Road in Berwyn is offered by the family to convince the Court that they know their son, and that they know he will stay and fight to clear his name and theirs.

In summary, we contend that defendant has established that he is likely to appear. The government's evidence fails to prove that no combination of conditions can assure defendant's appearance. It is worth noting that "[l]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." See *U.S. v. Salerno,* 481 U.S. 739, 755, 107 S. Ct. 2095, 95 L. Ed.2d 697 (1987).

Respectfully submitted,

*DUFFY & GREEN*

Dated:_____            By:_____
                                                            Joseph P. Green, Jr.

### NOTICE OF SERVICE

Electronic service of the Notice of Electronic Case Filing constitutes service of the filed document to all parties hereto and shall be deemed to satisfy the requirements of Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure and Rule 49 of the Federal Rules of Criminal Procedure.