**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES** | **:** | |
| **v.** | **:** | **Case No. 10-29** |
| **KENNETH SCHNEIDER** | **:** | |

<u>**O R D E R**</u>

AND NOW, this _____ day of June, 2010, upon consideration of defendant's

motion for reconsideration of order requiring pretrial detention, and the government's response

thereto, it is hereby ORDERED that defendant's motion is DENIED.

BY THE COURT:

_____
HONORABLE JUAN R. SANCHEZ
United States District Judge

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| **v.** | : | **Case No. 10-29** |
| **KENNETH SCHNEIDER** | : | |

## UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER REQUIRING PRETRIAL DETENTION

The United States of America, by its undersigned attorneys, Zane David Memeger, United States Attorney for the Eastern District of Pennsylvania, and Michelle Morgan-Kelly, Assistant United States Attorney, hereby responds to defendant's motion for reconsideration of order requiring pretrial detention. Because defendant is forum shopping, defendant has presented no new evidence to reopen this matter as required by the detention statute, and the government's evidence establishes that no conditions of release will ensure the safety of the community or defendant's appearance, the government requests that defendant's motion be denied.

## I.      BACKGROUND

Following the issuance of an Interpol notice seeking his arrest for child sexual exploitation, defendant was arrested in Cyprus on March 27, 2010. He was extradited to the United States and made his initial appearance before the Honorable Lynne A. Sitarski, United States Magistrate Judge, on June 1, 2010, at which time a detention hearing was held.

During that hearing, the government noted the presumption in favor of detention, and then argued that defendant was a danger to the community based on the nature of his crime,

1

and that he posed a significant flight risk given his extensive international contacts and financial means.  Tr. 3-4.  This included the fact that he has been living overseas for well over a year since he learned of the investigation.  Tr. 4-5.  The government also advised the court that defendant posted approximately $75,000 cash bond in Cyprus.  Tr. 24.

Defendant responded that he is an international business attorney.  Tr. 9.  He offered several exhibits into evidence, including information about the civil complaint and defendant's departure from the U.S. in March 2009, both of which were admitted.  Tr. 11-12. Defendant also offered a wholly uncorroborated, unsigned, typewritten letter, in English, allegedly from his former housekeeper in Russia, regarding the facts of the underlying offense, which was not accepted into evidence. Tr. 12-13.  Defendant's fourth exhibit, which was admitted, was the bail decision from Cyprus. Tr. 14.  He also described his recent efforts to leave Cyprus unescorted.  Tr. 16.  Exhibits regarding the value of the defendant's family's property in Berwyn, PA also were entered.  Tr. 18.  Defendant's parents and three sisters also were in the courtroom, and the court had the opportunity to observe them while discussing potential conditions of bail with defense counsel.  Tr. 17-18.

The court also had at its disposal a Pretrial Services Report indicating that defendant has lived in multiple countries overseas and travels between them frequently, maintains residences abroad, is not married, and has no children. The report also indicates multiple investments of the defendant valued at well over a million dollars, and reflects that he is the CEO of Aurience, LTD, which is located in London, England, and is involved in international mergers and aquisitions.  Based on both the dangerous nature of his offense and his means and incentive to flee, Pretrial Services recommended detention.

Upon hearing all of the evidence, Judge Sitarski concluded that the government had proved by a preponderance that no conditions would assure defendant's appearance.  Tr. 28-29.  Accordingly, he was ordered detained.  Tr. 29.

Defendant then appealed, and the matter was assigned to the emergency District Court Judge, the Honorable Thomas Golden, who held a de novo hearing.  The government reiterated the grave nature of defendant's dangerous offenses, Tr. 6-7, 9-10, and defendant's extensive overseas travel and foreign contacts, including travel to countries which have no extradition treaties with the U.S., his command of foreign languages, and his considerable financial means.  Tr. 7-9.  The government also discussed the fact that defendant departed and remained overseas upon learning of the criminal investigation, Tr. 11, and defendant's lack of ties to this District. Tr. 12.   The government offered a letter between counsel in the related civil matter indicating that defendant was advised of the criminal investigation before he left the United States in March 2009.  Tr. 36-38.  The government concluded by saying that defendant has ample incentive to flee, his family members are not adequate custodians, and he certainly has the contacts and the money to obtain fraudulent documents, leave the U.S., and live overseas.  Tr. 40-41.

Defendant reiterated that he posted 50,000 Euros cash bond, that he remained in Cyprus on bond, and that he was unsuccessful in his attempts to leave Cyprus unescorted by the U.S. Marshals.  Tr. 14-15.  Defendant's parents and sisters again were present.  Tr. 17.  Judge Golden also had the opportunity to review all of the exhibits previously filed by defendant.  Tr. 4-5, 18.  Judge Golden admitted all of defendant's prior exhibits, including the housekeeper's unsubstantiated letter.  Tr. 22, 25.  Defendant also argued that he cannot prepare for trial from

3

prison.  Tr. 33.

During the hearing, Judge Golden noted the rebuttable presumption in favor of detention, given the offense charged.  Tr. 26.  The court also noted that defendant traveled overseas for the entire period from March 2009 to present, never once returning to the United States, "let alone the Eastern District of Pennsylvania," and his principal residence is overseas. Tr. 29-30.

In a written Order issued June 3, 2010, Judge Golden concluded that there was a presumption in favor of defendant, which defendant had rebutted.  Order at 2.  Nevertheless, the court concluded that the government proved flight risk by a preponderance of the evidence and proved dangerousness by clear and convincing evidence.  Order at 4.  Regarding dangerousness, the court described the grave nature of the allegations that defendant molested a child, observing that "sexual contact with even one minor victim renders Defendant a clear danger to the community in general and to minors in particular."  Order 2-3. With respect to flight, the Court specifically noted that defendant has traveled to numerous countries, some of which have no extradition treaties with the United States, defendant has a primary residence overseas, conducts all of his business overseas, "has no reason to stay in the United States," and "has substantial foreign contacts who could easily enable him to flee and remain in unknown locations outside the United States for an indefinite period."  Order at 3-4.  The court referenced defendant's substantial financial resources and incentive to flee, and found that "[d]efendant has the practical and financial means to flee the jurisdiction, determining that electronic surveillance would be inadequate to ensure defendant's appearance.  Order at 4.  Defendant's instant motion followed.

4

## II.     ARGUMENT

### A.     Defendant Seeks Relief from the Wrong Judge.

Title 18, United States Code, Section 3142(f) states that a detention hearing shall be held "before <u>the</u> judicial officer," and may be reopened only "if <u>the</u> judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue[s]" of community safety and the assurance of defendant's appearance.  18 U.S.C. § 3142(f) (emphasis added).  It is noteworthy that the express language of the statute does not refer to "<u>a</u>" judicial officer, but rather, "<u>the</u> judicial officer," clearly indicating that the issue should be reopened before the judge who previously presided over the matter.  This is undoubtedly because it is that judge who had the opportunity to hear any testimony, review any documents, and evaluate in person the credibility of such testimony and documentation.

Having been detained by Magistrate Judge Sitarski after a full hearing, and having had that decision affirmed by District Court Judge Golden after a full <u>de novo</u> hearing, defendant is clearly forum shopping by presenting his "reconsideration" motion to Your Honor, who presided over neither the detention hearing nor the appeal.  This Court cannot "reconsider" something it never considered in the first place.  Defendant is not entitled to seek a reversal from every judge in the courthouse through additional <u>de novo</u> hearings <u>ad infinitim</u> and to so consume judicial resources, and points to no authority which would support his ability to do so.  Defendant's citation to Local Rule of Civil Procedure 40.1(1)(B) (in conjunction with Local Rule

of Criminal Procedure 1.2) refers to "modif[ication]" of orders, not complete reversals.[1]

Moreover, Section 3142 provides more specific conditions for a detention hearing to be

reopened, and, as set forth below, defendant has not met them.

### B.    Defendant Has Presented No New Evidence, As Required by Law.

As previously indicated, Section 3142(f) sets forth its own two conditions for

reopening a detention hearing: it may be reopened only "if the judicial officer finds that

information exists that was not known to the movant at the time of the hearing and that has a

material bearing on the issue[s]" of community safety and the assurance of defendant's

appearance.  18 U.S.C. § 3142(f) (emphasis).

Defendant offers no new information that he did not know at the time of the

hearing.  First, he claims to have unspecified "evidence" regarding the absence of overseas bank

accounts.  Contrary to defendant's assertion, Def. Br. at 5 n.3, defendant certainly had notice that

the government would argue that his financial resources are substantial enough to permit him to

flee: It was plainly stated in the government's opening motion for pretrial detention filed on May

30, 2010, at paragraph 5, and he has had two opportunities to argue and present evidence in

opposition.  Moreover, it is inconceivable how defendant could prove a negative - - that he has

no overseas bank accounts containing between $100,000 and $1,000,000 - - to the satisfaction of

the court.

Second, he claims to have "new" information regarding who paid his bond in

Cyprus.  Defendant was informed of the government's argument regarding his posting of cash

---

[1] Contrary to defendant's broad interpretation, what Judge Golden expressly declined to rule on was "how the free flow of information goes between counsel and its client." Tr. 35.

bail in Cyprus in its opening motion, and he has had two opportunities to argue in opposition. Gov. Mtn. for Dtn. at ¶ 5.   Moreover, he made Judge Golden aware at the hearing that defendant's business borrowed 50,000 Euros from another entity to post the bond.  Tr. at 14. Thus, again, he is presenting no new and material information.

The entire remainder of defendant's points are legal argument, not the presentation of new, material information mandated by Section 3142(f).  The availability of GPS electronic monitoring, which defendant previously opposed, is neither evidence, nor new, nor unknown to Judge Golden at the time of the hearing, who stated, "I happen to like electronic monitoring."  Tr. 32.  Legal argument regarding whether Judge Golden made correct factual findings and regarding the operation of the statutory rebuttable presumption are not new evidence not known at the time of the hearing as required by Section 3142(f).  Arguments about whether electronic monitoring is constitutional are not new evidence not known at the time of the hearing; indeed, counsel indicated to the government well over a month ago that he would be making this argument.

Defendant clearly seeks to have his cake and eat it too; he pressed relentlessly for his detention hearing to be held on the date of his arrival in the United States, May 28, 2010, yet having had an additional day (and intervening holiday weekend) to prepare for the June 1, 2010, hearing, plus another additional day to prepare for the second hearing on June 2, 2010, defendant did not request a continuance, and now claims he was unable to prepare.  His claims are unavailing, at best.

In a second attempt at having his cake and eat it too, defendant vehemently opposes the government's motion for a complex case, referring to this matter as "a single

7

occasion of international travel" that relys upon "the credibility of the uncorroborated testimony" "of one teenage boy in 2001," yet then argues in the inappropriate context of bail "reconsideration" that he cannot prepare for a trial from prison because witnesses are overseas, 4000 documents must be reviewed, and only defendant speaks Russian (even though the government has provided him with all of the relevant Russian documents translated into English, by virtue of paying a translation service, which defendant also has the ability to do).

In at least his third attempt to have his cake and eat it too, defendant complained to this Court that his life was being threatened in Cypriot jail merely by virtue of being labeled as a pedophile, and demanded to be placed in solitary confinement, yet now that the Federal Detention Center is providing that type of protection for defendant, he claims he cannot prepare for trial.

Needless to say, defendant's complaints about preparing for trial in prison are neither new nor evidence.  Moreover, defendant is far from the first person to prepare for trial while being housed in the Secure Housing Unit ("SHU").  One need only look as far as United States v. Mogilyansky, No. 08-711, sentenced in this District last year by the Honorable Mary A. McLaughlin, to find a case in which: (1) a wealthy international businessman with substantial overseas ties charged with child sex tourism was detained; (2) defendant was housed by the Bureau of Prisons in the SHU for his safety; (3) the vast majority of the evidence was in Russian and defendant was provided by the government with translations; and (4) the case was declared complex[2].  Defendant's situation is far from anomalous.

---

[2] In that case, defendant agreed that the case was complex, given that the witnesses were in Russia and there were many documents to review.

8

As Judge Golden found after a <u>de novo</u> hearing, there are no conditions of release which will ensure defendant's appearance or the safety of the community.  Defendant's motion is not properly before this Court, does not raise new, material information as required by law, sets forth inappropriate legal argument, and should be flatly denied.

## III.    CONCLUSION

For all of these reasons, the government requests that defendant's motion for reconsideration of order requiring pretrial detention be denied.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney


_____/s/_____
Michelle Morgan-Kelly
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this day I caused a copy of the Government's response to defendant's

motion for reconsideration of order requiring pretrial detention and proposed order, to be served

by electronic filing, and/or first-class mail, addressed to:


JOSEPH P. GREEN
DUFFY & GREEN
138 WEST GAY STREET
WEST CHESTER, PA 19380


_____/s/_____
MICHELLE MORGAN-KELLY
Assistant United States Attorney


Dated: June 18, 2010

10