# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES | : | |
| v. | : | Case No. 10-29 |
| KENNETH SCHNEIDER | : | |

### UNITED STATES' RESPONSE TO DEFENDANT'S MOTION IN LIMINE SEEKING EXCLUSION OF EVIDENCE OF UNCHARGED MISCONDUCT

The United States of America, by its undersigned attorneys, Zane David Memeger, United States Attorney for the Eastern District of Pennsylvania, and Michelle Morgan-Kelly and Vineet Gauri, Assistant United States Attorneys, hereby responds to defendant's motion in limine seeking exclusion of uncharged misconduct. Because the evidence of his own sexual misconduct that defendant seeks to exclude is intrinsic to the charges, defendant's motion should be denied.

## I.      FACTUAL BACKGROUND

Defendant was charged by criminal complaint on December 4, 2009 with traveling in foreign commerce to engage in sex with a minor in violation of 18 U.S.C. § 2423(b), and transporting a person in foreign commerce with the intent to engage in a criminal sexual act in violation of 18 U.S.C. § 2421. The complaint alleged as follows:

> 7.      In August 2008, the Philadelphia Division of the FBI received information regarding KENNETH SCHNEIDER, a United States citizen who has lived for long periods of time overseas. SCHNEIDER had allegedly molested at least one minor Russian boy known as R.Z. over a period of many years beginning in 1998, both in the United States and abroad. Additionally, SCHNEIDER is the listed Founder and President of the "Apogee

Foundation," an arts-related foundation that allegedly provides assistance to children throughout the world who demonstrate aptitude in the fine arts.

8.      On October 16, 2008, [FBI Special Agent Pamela Kirschner] interviewed R.Z. concerning the allegations of molestation, which revealed that R.Z. was born in Kazakhstan on March 21, 1986, that both of his parents were ballet dancers, and that he started attending the Moscow State Academy of Choreography (also known as the Bolshoi Academy) in Russia in 1996, at the age of ten.  After approximately two years, his parents could not afford to continue paying the approximately 1000 rubles per month for him to stay in the dormitory, and since they lived too far away for him to commute to school, he was withdrawn from the Bolshoi Academy.

9.      During the summer of 1998, when R.Z. was 12 years old, two instructors from the Bolshoi Academy, Tatiana and Nikolai Dokukin, brought KENNETH SCHNEIDER, to R.Z.'s home and introduced him as someone who was interested in sponsoring gifted children of the fine arts.  Despite the serious reservations of R.Z.'s parents, due to their financial difficulties and their desire for R.Z. to remain at the Bolshoi Academy, arrangements were made for R.Z. to return to the Bolshoi Academy and live at SCHNEIDER's nearby apartment in Moscow, Russia. R.Z. identified SCHNEIDER from his Pennsylvania Driver's License photograph.

10.      Beginning approximately one week after R.Z. moved into SCHNEIDER's apartment, when R.Z. was 12 years old, SCHNEIDER began touching R.Z.'s genital area and eventually performed oral sex on R.Z. against R.Z.'s will. SCHNEIDER also told R.Z. that he wanted to help him take a bath. During the bath, SCHNEIDER started touching R.Z.'s penis and pulling down his foreskin in a way that was painful to R.Z.  R.Z. told SCHNEIDER that it hurt and asked him to stop but SCHNEIDER continued.  Ultimately, SCHNEIDER sodomized R.Z.  SCHNEIDER continued to engage in oral and anal sex with R.Z. over the course of approximately 6 years, from the time that R.Z. was 12 years of age until the time that R.Z. was approximately 18 years of age.

11.      SCHNEIDER plied R.Z. with various gifts and also

psychologically manipulated him through fear and intimidation.
When R.Z. resisted or expressed sadness about the abuse,
SCHNEIDER told R.Z. that he should keep things secret because
SCHNEIDER would get in trouble and could go to jail.
SCHNEIDER added that people would not understand their
relationship, and that R.Z.'s future as a ballet dancer would be over
because he would have no financial support.

12.        In the Summer of 2001, when R.Z. was 15 years
old, SCHNEIDER brought R.Z. from Russia to the United States to
study ballet at The Rock School in Philadelphia.  They stayed at
SCHNEIDER's parent's house in Berwyn, Pennsylvania.  While in
the United States, SCHNEIDER ceased all sexual activity except
kissing and touching of the genitals.  However, upon departing the
United States on approximately August 22, 2001, and returning to
Moscow, Russia, all sexual activity between the two resumed,
including oral and anal sex.  At that time, R.Z. was still 15 years
old.  SCHNEIDER was 36 years old.

Complaint, ¶¶ 7-12.

Defendant was indicted on January 14, 2010.  The indictment alleged as follows:

2.        In 1998, in Moscow, Russia, defendant KENNETH
SCHNEIDER, an attorney, was acquainted with N.D. and T.D.,
husband and wife whose names are known to the grand jury, who
were ballet instructors at the Moscow State Academy of
Choreography.  SCHNEIDER was a self-described philanthropist
who was willing to provide "assistance" to students attending the
Academy.

3.        In the summer of 1998, N.D. and T.D. introduced defendant
KENNETH SCHNEIDER to R.Z., whose name is known to the
grand jury, and who at the time was 12 years old.  R.Z. was born in
March 1986.  R.Z. had been removed from the Academy because
his parents lived at a great distance from the Academy and could
not afford to pay his board.  SCHNEIDER offered to pay for R.Z.'s
board at the Academy.  SCHNEIDER soon thereafter convinced
R.Z.'s parents to let R.Z. live alone with SCHNEIDER at
SCHNEIDER's apartment, which was within a few blocks of the
Academy.

4.        From the fall of 1998 until approximately 2004, R.Z. lived

3

with SCHNEIDER, and SCHNEIDER engaged in a sexual
relationship with R.Z.  This included initially "grooming" him for
sexual contact by touching him, kissing him, buying him gifts, and
pressuring him to maintain the secrecy of the sexual relationship,
and eventually involved SCHNEIDER engaging in oral and anal
intercourse with R.Z.

5.      In the summer of 2001, when R.Z. was 15 years old and
SCHNEIDER was 36 years old, SCHNEIDER arranged for R.Z. to
travel with him from Moscow, Russia to attend a summer program
for ballet study at the Rock School in Philadelphia, Pennsylvania.
Upon returning to Moscow, Russia in August 2001, SCHNEIDER
continued his sexual relationship with R.Z., including engaging in
oral and anal intercourse with R.Z.

Indictment, ¶¶ 2-5.

## II.    ARGUMENT

### A.      The Evidence of Defendant's Ongoing Sexual Relationship with the Victim from 1998 to 2004 Is Intrinsic to the Charged Offenses.

Federal Rule of Evidence 404(b) precludes other crimes evidence to show bad

character or a criminal propensity, but permits the admissibility of such evidence to prove

"motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or

accident."  Fed. R. Evid. 404(b).  Thus, Rule 404(b) "does not apply to evidence of uncharged

offenses committed by a defendant when those acts are intrinsic to the proof of the charged

offense."  United States v. Gibbs, 190 F.3d 188, 217 (3d Cir. 1999) (admitting evidence of

defendant's acts of violence in prosecution for cocaine conspiracy); see also Fed. R. Evid.

404(b), Advisory Committee Note (1991).  The Third Circuit has held in a conspiracy case that

an intrinsic act is one that directly proves the conspiracy.  United States v. Cross, 308 F.3d 308,

320 (3d Cir. 2002).  Thus, "[e]ven if the evidence is extremely prejudicial to the defendant, the

court would have no discretion to exclude it because it is proof of the ultimate issue in the case."

United States v. Hoffnecker, 530 F.3d 137, 189 (3d Cir. 2008) (citations and internal quotations

omitted).  Accordingly, in Hoffecker, the court admitted evidence in a conspiracy and mail fraud

prosecution that defendant was banned for life by the Federal Trade Commission from selling

precious metal on a financed basis.  Id.  This evidence demonstrated defendant's intent and

established why he structured the fraud in a certain way.  Id. at 189-90; see also United States v.

Fitzgerald, 264 F.R.D. 130, 132 (D. Del. 2010) (admitting evidence intrinsic to conspiracy);

United States v. Johnson, 262 F.R.D. 410, 415 (D. Del. 2009) (same).

       Here, the evidence of defendant's ongoing sexual relationship with the child

victim is essential to show his intent upon traveling on August 22, 2001.  The government is

required to prove that defendant had some intent to engage in a sexual act with the victim at the

time that he traveled in foreign commerce.  18 U.S.C. § 2423(b).  This intent is proven by the

fact that prior to their trip to and from the United States in the summer of 2001, the defendant

and the victim had an ongoing sexual relationship.  This relationship began when the child was

12 and continued following the trip, until the child reached roughly the age of 18.  Notably, as

alleged in the complaint, the defendant and the minor did not engage in sexual relations while

staying at defendant's parents' home in Berwyn, Pennsylvania, in the summer of 2001.  Thus, the

relationship that existed between the two in Russia prior to the trip, and the fact that sex actually

took place after the trip, are critical to proving defendant's intent at the time of travel to engage

in sex with the minor upon his return to Russia.  In addition, the tumultuous end to the

relationship, which was very difficult for the victim and which the victim can explain in great

detail, is evidence of the psychological nature and very existence of the relationship, making it,

too, relevant to defendant's intent.  Defendant clearly seeks to exclude the evidence of the

beginning and the end of the relationship in order to rob the victim's testimony of its inherent credibility.  His motion should be denied.

### B.        The Evidence Is Inextricably Intertwined with the Charged Offenses.

Even if this Court concludes that the evidence is not intrinsic, the evidence nevertheless is exempt from exclusion based on Rule 404(b) because it is necessary to explain the context of the crime.  In <u>Cross</u>, the Third Circuit "express[ed] no view on whether 'other acts' evidence that does not directly prove an element of the charged offense may be 'intrinsic' (and thus exempt from Rule 404(b)) if the other acts were 'inextricably intertwined' with the events underlying the charge, so that the evidence is necessary for the jury to understand how the offense occurred or to comprehend crucial testimony."  <u>Cross</u>, 308 F.3d at 320 (citations omitted).  Thus, this Court has held that "an act is intrinsic to the charged act or crime if it is inextricably intertwined with the charged act or crime, in this case, the conspiracy, or is <u>necessary to complete a coherent story of the crime charged</u>."  <u>United States v. Ramos</u>, 971 F.Supp. 186, 192 (E.D. Pa. 1997) (emphasis added) (citations omitted).

Similary, in the recent post-<u>Cross</u> decision of <u>United States v. Walker</u>, a district court in this circuit admitted evidence that one of the 30 bullets fired from a gun connected with the defendant shot a two-year-old because it was "inseparable from the criminal event itself." <u>United States v. Walker</u>, No. 1:00-CR-300-03, 2010 WL 2408412, *12 (M.D. Pa. June 11, 2010).  In so holding, the Middle District of Pennsylvania relied in part on <u>United States v. Parker</u>, 553 F.3d 1309, 1314-15 (10th Cir.2009), for the proposition that "Rule 404(b) only limits evidence of 'other' crimes ... extrinsic to the charged crime ... evidence of acts or events that are part of the crime itself, or <u>evidence essential to the context of the crime</u>, does not fall under the

6

other crimes limitations of Rule 404(b)." <u>Walker</u>, 2010 WL 2408412, *12 (emphasis added).

Here, the evidence of the nature of the relationship between the defendant and the victim before and after the travel is critical for explaining the context of the crime. In order to understand that sexual relations were an ingrained and regular part of defendant's relationship with the victim at the time of their travel to the United States, thus establishing defendant's intent to re-engage the victim in sexual activity upon their return to Moscow, it is essential to show how the victim came to live with defendant in 1998 and how their sexual relationship evolved through defendant's efforts to "groom" the child in order to encourage him to ultimately engage in sexual acts. Otherwise, the jury will be assessing the relationship in a vacuum, without explanation of its beginning or its end, both of which directly demonstrate its inherent credibility and serve to convincingly explain the conduct of the victim.

### C.   The Evidence is Probative of Defendant's Motive and Intent.

Finally, should the Court conclude that the evidence does in fact constitute extrinsic, "other" bad acts under Rule 404(b), the government submits that the evidence should be admitted under Rule 404(b) as indicative of defendant's motive and intent. Rule 404(b) is a rule of inclusion, not exclusion. <u>United States v. Console</u>, 13 F.3d 641, 659 (3d Cir. 1993); <u>United States v. Sampson</u>, 980 F.2d 883, 886 (3d Cir. 1992); <u>Government of Virgin Islands v. Edwards</u>, 903 F.2d 267, 270 (3d Cir. 1990). "Thus, the burden on the government is not onerous. All that is needed is some showing of a proper relevance. Whereupon the trial court must judge the government's proffered reason, the potential for confusion and abuse, and the significance of the evidence, and decide whether its probative value outweighs its prejudicial effect." <u>Sampson</u>, 980 F.2d at 888. "The parameters of Rule 404(b) are not set by the defense's theory of the case;

7

they are set by the material issues and facts the government must prove to obtain a conviction."
Id. As previously stated, the sexual relationship that existed prior to the travel of defendant and the victim directly informs the defendant's state of mind at the time of the travel in this case. Thus, the evidence is clearly probative.

Assuming the Court agrees that the evidence is probative, it must assess whether the evidence is unfairly prejudicial under Rule 403. Evidence is unfairly prejudicial if it suggests a decision on an improper basis. See Fed. R. Evid. 403, Advisory Committee Note. "As Rule 403 makes explicit, the law shields a defendant against unfair prejudice, not against all prejudice." United States v. Smith, 292 F.3d 90, 99 (1st Cir. 2002) (emphasis in original).

Although there is some danger of prejudice associated with 404(b) evidence, it can be reduced through a proper limiting instruction. As the Third Circuit has stressed, a limiting instruction eliminates any potential for unfair prejudice and ensures that the jury does not consider the evidence for an improper purpose. United States v. Sriyuth, 98 F.3d 739, 748 (3d Cir. 1996); see also United States v. Givan, 320 F.3d 452, 462 (3d Cir. 2003) ("We note ... that it is a basic tenet of our jurisprudence that a jury is presumed to have followed the instructions the court gave it"; "If we preclude the use of evidence admissible under Rule 404(b) because of a concern that jurors will not be able to follow the court's instructions regarding its use we will inevitably severely limit the scope of evidence permitted by that important rule.").

As long as the district court adequately explains its reasons for admitting or excluding evidence pursuant to Rule 403, the decision is entirely within the court's discretion and the Court of Appeals reviews the decision only for an abuse of discretion. Government of Virgin Islands v. Blake, 118 F.3d 972, 977 (3d Cir. 1997). Indeed, the Third Circuit has stated

that "if judicial restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal."  United States v. Balter, 91 F.3d 427, 442 (3d Cir. 1996); see also United States v. Retos, 25 F.3d 1220, 1228 (3d Cir. 1994) ("It is the trial court, of course, and not the Court of Appeals, which is in the best position to consider the complicated evidentiary issues involved in a given case, and to strike the balance required by Rule 403."); Sampson, 980 F.2d at 886 (the district court's weighing process under Rules 404(b) and 403 receives "considerable leeway").   Thus, any prejudice in this matter can be cured by a limiting instruction.

Defendant argues, with no legal authority, that the government is required to "outline with specificity" all of the evidence it intends to show at trial against defendant.  Def. Memorandum at 3.  Defendant has at his disposal the Complaint and the Indictment in this matter, both of which outline in detail the alleged course of the relationship that the government intends to prove.  In addition, defendant has been given roughly 3500 pages of discovery in this matter, which constitutes all of the discovery excepting Jencks material.  Thus, defendant's motion constitutes a thinly-veiled effort by defendant to obtain Jencks material prior to its required disclosure and learn in advance what the victim and other witnesses will say regarding the relationship.  As defendant is well aware, he is not legally entitled to such information until after each witness has testified, but the government will provide him with Jencks material prior to trial consistent with the Court's prior ruling.  See 18 U.S.C. § 3500.

**III.     CONCLUSION**

        For the reasons set forth above, the government respectfully requests that

defendant's motion in limine seeking exclusion of evidence of uncharged misconduct be denied.

        Respectfully submitted,

        ZANE DAVID MEMEGER
        United States Attorney


        _____/s/_____
        Michelle Morgan-Kelly
        Vineet Gauri
        Assistant United States Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this day I caused a copy of the Government's response to  defendant's

motion in limine seeking exclusion of uncharged misconduct, to be served by electronic filing,

and/or first-class mail, addressed to:


JOSEPH P. GREEN
DUFFY & GREEN
138 WEST GAY STREET
WEST CHESTER, PA 19380


_____/s/_____
MICHELLE MORGAN-KELLY
Assistant United States Attorney


Dated: July 21, 2010

11