**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**UNITED STATES OF AMERICA** :

    **vs.** :     2:10-CR-00029-JS

**KENNETH SCHNEIDER** :

*DEFENDANT'S SUPPLEMENTAL MEMORANDUM REGARDING
CONFRONTATION CLAUSE OBJECTIONS TO DEPOSITION TESTIMONY*

The Court has requested that counsel for defendant provide a written statement of the defendant's Confrontation and related objections to Rule 15 depositions and video testimony at trial. Defendant objects to any deposition procedure under Rule 15 in which he is not "present" and able to meet the witness "face-to-face." However, given the logistics here, and the realities of 21st Century technology, we believe that a live video deposition is preferable to a remote deposition.[1]

Defendant contends that the conduct of a live video deposition presents no greater or worse Confrontation violation than a remote deposition where the lawyers are present with the witness and the defendant participates only by video feed. We use the term "live video" to refer to a process by which the witness is in a remote location (here, Moscow), and the Judge, the lawyers and the defendant are present in an open public courtroom. We use the term "remote deposition" to refer to a procedure by which the defendant is

---

[1] Defendant favors a live video deposition over a remote deposition because the remote deposition will require additional unreasonable delay. Particularly where defendant is detained without bail solely because he is an international transactions lawyer who has lived and worked abroad, further extensions of delay and detention will violate his due process rights.

imprisoned at FDC Philadelphia, the witness and the lawyers are together in a remote location (here, Moscow), and the defendant is provided with a live video feed of the remote proceedings.

The Sixth Amendment and its Confrontation Clause generally guarantee that a defendant will have the right to face-to-face confrontation with a witness. *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 1369, 158 L. Ed. 2d 177 (2004). In *Crawford*, the Supreme Court has authoritatively described the history of the right of confrontation, and the manifest intention of the Founders to require face-to-face confrontation at trial (or during prior testimony). *Id.*, 541 U.S. 42-50. That right can be impaired only under special and limited circumstances.

The Supreme Court had carved out a narrow exception to the requirement for face-to-face confrontation in *Maryland v. Craig*, 497 U.S. 836, 111 L. Ed. 2d 666, 110 S. Ct. 3157 (1990), where the Court rejected a confrontation clause challenge to a Maryland statute that allowed a child witness in a sex abuse case to testify via a one-way closed-circuit television (which does not allow the witness to view the defendant) under certain limited circumstances. Id. at 860. The Court emphasized, however, that the preference for face-to-face confrontation is a strong one and that a defendant's sixth amendment confrontation right "may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise

assured." *Id.* at 850. *Craig* specifically requires proof and a finding that a child witness would be traumatized by the presence of the defendant during their testimony. 497 U.S. at 856.

The Third Circuit has not addressed these issues, but there is guidance from Courts of Appeal in these cases. The Eight Circuit has addressed the issues in *United States v. Turning Bear,* 357 F.3d 730 (8th Cir. 2004), and in *United States v. Bordeaux*, 400 F.3d 548 (8th Cir. 2005). In *Turning Bear*, the Court rejected the testimony of a child witness using a two-way video feed because there was no proof, as required by *Craig*, that the trauma caused by the presence of the defendant was the dominant element preventing the child witness from testifying in open court. *Turning Bear*, 357 F.3d at 737. In *Bordeaux,* the Court again held that two way video was an insufficient substitute for face-to-face confrontation without proof that fear of the defendant was the factor that justified dispensing with face-to-face confrontation.[2]

---

[2] In Bordeaux, the Court provided a thoughtful set of issues that would need to be considered in any two-way video feed:

> Even if we assumed that a two-way system might conceivably capture the essence of the face-to-face confrontation in some situations, whether it actually did would turn on the answers to a myriad of hard logistical questions (How big must the monitor be? Where should it be placed? Where should the camera focused on the defendant be placed?) that would render the theoretical promise of the two-way system practically unattainable.

*United States v. Bordeaux*, 400 F.3d 548, 555 (8th Cir. S.D. 2005). In addition, there are difficult evidence issues when documents like prior statements are shown to the witness. Defendant's right to review the documents with his counsel is furthered by a live video

The same result was reached in United States v. Yates, 438 F.3d 1307 (11th Cir. 2006) where the Court rejected the use of live video testimony at trial over a Confrontation Clause objection:

> The simple truth is that confrontation through a video monitor is not the same as physical face-to-face confrontation. As our sister circuits have recognized, the two are not constitutionally equivalent. See, e.g., *United States v. Bordeaux*, 400 F.3d 548, 554-55 (8th Cir. 2005). The Sixth Amendment's guarantee of the right to confront one's accuser is most certainly compromised when the confrontation occurs through an electronic medium. Indeed, no court that has considered the question has found otherwise; even the *Gigante* court acknowledged that, "the use of remote, closed-circuit television testimony must be carefully circumscribed." *United States v. Gigante,* 166 F.3d 75, 80 (2d Cir. 1999).

*United States v. Yates*, 438 F.3d 1307, 1315 (11th Cir. Ala. 2006).

The Confrontation problems in this case are magnified because there are no collateral assurances of trustworthiness sufficient to support the second prong of the Craig test.[3] These Confrontation assurances require an oath - impressing the witness with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury. See, *United States v. Yates*, supra, 438 F.3d 1318, quoting *Craig*, 497 U.S. at 845-846. Even in the Second Circuit, where the use of video has been approved in limited "exceptional circumstances" by *United States v. Gigante*, 166 F.3d 75, 81 (2d Cir. 1999),

---

deposition.

[3] The oath issues addressed here are no different in a remote or a live video proceeding, but we raise the issues here to protect the record in a single, convenient place.

the courts have addressed oath problems present here.[4]

In *United States v. Banki*, 2010 U.S. Dist. LEXIS 27116 (S.D.N.Y. 2010), the defendant sought to admit live video testimony at trial from witnesses located in Iran. Like Russia, there are no extradition procedures available form Iran. The Court described the real oath problems present in such a case with "witnesses who are entirely beyond the reach of the United States government".

> This country has no diplomatic relations with Iran and no means to extradite even U.S. citizens residing within its borders. Even if the Court were to administer the oath to the Iranian witnesses over the computer monitor in real time, there is no way to ensure truth-telling as the Government cannot prosecute the witnesses for perjury or for the making of false statements. Without the teeth of the penalty of perjury, the oath becomes nothing more than an empty recital. Thus, the strongest indicator of the reliability of a witness' testimony - the oath - is effectively absent here.

*Id.,* 2010 U.S. Dist. LEXIS 27116 *7 (footnote omitted).

The oath problems faced here are equally as insurmountable. There is no realistic opportunity to prosecute the proposed deponent if she chooses to lie. She is elderly, and refuses to travel. There is no assurance that the administration of an oath, by a United States official or anyone else, will impress upon her the need to tell the truth.

---

[4] In *United States v. Gigante*, the Court allowed a Government witness to testify at trial using two-way CCTV where the witness was too ill to travel to court and was living in an undisclosed location as part of the Federal Witness Protection Program. 166 F.3d at 79.

For these reasons defendant objects to testimony taken out of his presence and without the administration of an effective oath. This objection does not change, in scope or effect, dependent upon whether it is a remote deposition, a live video deposition or a live video "appearance" at trial.

Respectfully submitted,

***DUFFY & GREEN***

Dated:  July 30, 2010                    By:     s/ Joseph P. Green, Jr.
                                                 138 West Gay Street
                                                 West Chester, PA 19380
                                                 610-692-0500
                                                 jpgreen@duffygreen.com

### *NOTICE OF SERVICE*

Electronic service of the Notice of Electronic Case Filing constitutes service of the filed document to all parties hereto and shall be deemed to satisfy the requirements of Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure and Rule 49 of the Federal Rules of Criminal Procedure.