IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | 2:10-cr-000029-JS |
| KENNETH SCHNEIDER | : | |

*DEFENDANT'S MOTION IN LIMINE TO EXCLUDE OPINION TESTIMONY*

Defendant Kenneth Schneider, by his attorneys, moves this Court for an *in limine* order precluding the government from presenting evidence at trial under Federal Rule of Evidence ("F.R.E.") 702. In support of this motion defendant states the following:

1. On July 23, 2010, government counsel informed the defense by letter that it intended to call Dr. Sherri Edelman as a witness at trial to present "expert" testimony under F.R.E. 702. The letter summarized her expected testimony and enclosed Edelman's *curriculum vitae*. According to the letter, Edelman would "testify generally regarding the psychological and emotional nature of the relationship between sexual abusers of children and their victims." A copy of the July 23 letter is attached to this motion as Exhibit A. The government's Trial Memorandum, filed September 10, 2010 (Doc. 99, at 9), now confirms that the prosecutors intend to call Dr. Edelman as one of their 21 trial witnesses.

2. The government's letter states that Dr. Edelman would describe several behavioral patterns and traits of sex offenders and their child victims. Her testimony is expected to include some of the following "expert" conclusions:

> ¬ "[T]he vast majority of victims of child sexual abuse do not disclose the abuse to anyone, disclose on a delayed basis, . . . , or attempt to disclose but are not believed, making them reluctant to disclose further."

- 1 -

- "[I]t is well-known in the field of child sexual abuse psychology that in these relationships, the abusers, engage in 'grooming' activities. . . ."

- "[V]ictims often have positive physical feelings toward their abusers."

- "[V]ictims also often have positive emotional feelings toward their abusers …."

- "[V]ictims often feel what they describe as 'love' toward their abusers and have strong attachments to them."

- "[C]hildren frequently engage in denial regarding situations that they cannot cognitively process, such as sexual abuse . . . . Children, unlike adults, are more mindful and present than adults [sic], and their brains are not yet formatted to think in the abstract and to process and ruminate over difficult experiences in the same way as adults."

There is no suggestion in the summary provided by the government that Dr. Edelman will rely on any scientific principles or studies that are age-appropriate or culturally-appropriate to the behavior of the complainant in this case, a young Russian male.

3. The government's letter also reveals that Edelman has never interviewed the complaining witness nor prepared a report in connection with this case. She has never previously been qualified as an opinion witness in any court, under F.R.E. 702 or otherwise. According to the government, Edelman's testimony "will assist the trier of fact in understanding the behavior of the victim in this case."

4. The government's letter ends with the following disclosure: "Please also note that Dr. Edelman is herself a survivor of child sexual abuse." Evidence of this "fact" is completely irrelevant (except insofar as it may affect the witness's bias and credibility) and unduly prejudicial and confusing to the jury within the meaning of Rules 402 and 403.

5. Dr. Edelman's *c.v.*, which is attached as Exhibit B, reflects that (a) she received her doctorate six years ago; (b) she holds no academic posts; (c) she has written no books; (d) she

- 3 -

has published no articles in peer-reviewed or academic journals; and (e) she has conducted no research in the field of child sex abuse.

6. The proposed testimony does not qualify as admissible opinion testimony under F.R.E. 702 or the cases interpreting it. It is not reliable or grounded in scientifically accepted methodology. It is clearly offered by the government for the sole purpose of buttressing or bolstering the credibility of the complaining witness's testimony – an impermissible purpose for opinion testimony. It therefore should be excluded by the Court in its entirety.

7. The government's proffer also fails to comply with Fed.R.Crim.P. 16. Rule 16(a)(1)(G) requires the prosecution to provide "a written summary of any testimony that the government intends to use under Rule[] 702 . . . of the Federal Rules of Evidence during its case-in-chief at trial." The summary "must describe the witness's opinions, *the bases and reasons for those opinions*, and the witness's qualifications." (emphasis added).

- 4 -

WHEREFORE, defendant respectfully requests that this Court enter an Order excluding all proposed opinion testimony from Dr. Edelman.

|  |  | Respectfully submitted,<br>***DUFFY & GREEN*** |
|---|---|---|
| Dated:  September 11, 2010 | By: | *s/ Joseph P. Green, Jr.*<br>138 West Gay Street<br>West Chester, PA 19380<br>  610-692-0500<br>jpgreen@duffygreen.com |
| Of counsel:    Peter Goldberger, Esquire<br>                      Cheryl D. Stein, Esquire |  |  |

## *NOTICE OF SERVICE*

Electronic service of the Notice of Electronic Case Filing constitutes service of the filed document to all parties hereto and shall be deemed to satisfy the requirements of Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure and Rule 49 of the Federal Rules of Criminal Procedure.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | 2:10-cr-000029-JS |
| **KENNETH SCHNEIDER** | : | |

*MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION IN LIMINE SEEKING EXCLUSION OF OPINION TESTIMONY*

The defendant, Kenneth Schneider, moves *in limine* for exclusion of the government's proposed opinion witness. For the following reasons, the motion should be granted.

1. *The Government Has Not Complied With Rule 16*

Noncompliance with the governing rule of procedure is the first reason for exclusion of Dr. Edelman's testimony. Rule 16(a)(1)(G), Fed.R.Crim.P., requires the prosecution to provide "a written summary of any testimony that the government intends to use under Rule[] 702 . . . of the Federal Rules of Evidence during its case-in-chief at trial." The summary "must describe the witness's opinions, *the bases and reasons for those opinions*, and the witness's qualifications." (emphasis added). The government's letter (Exhibit A) falls far short of satisfying the Rule.

While the government's discovery disclosure reveals the witness's opinions and her qualifications, it is silent as to the bases and reasons for those opinions. The letter simply states that the witness will testify in accord with the summary provided. It does not contain a hint of the source of or analysis behind ("bases and reasons for") those opinions. This failure to comply with the dictates of the discovery rule by itself should be fatal to the prosecution's request to present such testimony.

Rule 16(d)(2) provides a list of remedies that may be employed by the Court in response to a violation by one of the parties. Subparagraph C allows the Court to "prohibit that party from introducing the undisclosed evidence; . . . ." Although the government has disclosed the substance of the expected testimony, its failure to provide the bases for the testimony should still lead this Court to prohibit the testimony in its entirety. The non-disclosure has hampered the defense in its trial preparation – both in terms of preparing cross-examination of the opinion witness and of finding its own expert witness to provide contrary testimony.[1] Without knowledge of the studies and data on which Edelman relies – assuming that any such exist – the defense cannot adequately prepare to counter her conclusions. Due process and fundamental fairness dictate that the testimony should not be received.

2. *The Government's Proposed Opinion Testimony Is Not Admissible Under Rule 702, Daubert and its Progeny.*

The government's proffer also fails to satisfy the principal rule governing the admissibility of "expert" opinion evidence. Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

As will be discussed more fully below, Dr. Edelman's testimony does not satisfy any of these criteria.

---

[1] The defense has retained an expert, Dr. Thomas Howarth, and has produced his report to the government in discovery. However, Dr. Howarth's preparation and testimony has been and will be hampered by the government's failure to disclose, in accordance with Rule 16, the *bases and reasons* for those opinions. The defense believes that no opinion testimony is proper on this subject. However, if the government's opinion testimony is admitted, the defense will call Dr. Howarth as a witness in response.

Under Evidence Rule 702, the government as proponent of expert testimony has the burden to demonstrate that its witness will "assist the trier of fact," meaning that the evidence would be "helpful" to the jury in determining a fact in issue. *United States v. Perez*, 280 F.3d 318, 341 (3d Cir. 2002); *United States v. Bennett*, 161 F.3d 171, 182 (3d Cir. 1998); *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985). The burden with respect to admissibility under Rule 702 is on the proponent; expert testimony does not presumptively come in whenever it is relevant (in the minimal sense generally used under Rule 401), but rather only when it is helpful as well. *Cf. United States v. Brownlee*, 454 F.3d 131, 143 (3d Cir. 2006) (quoting *Downing*'s requirement that "a defendant who seeks the admission of expert testimony must make an on-the-record detailed proffer to the court"). By filing this motion, the defense does not assume any burden to demonstrate inadmissibility; the burden remains with the government to demonstrate that its proposed Rule 702 evidence satisfies the criteria for admission.

The seminal Supreme Court case on the interpretation of F.R.E. 702 is *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). Both the majority and minority opinions in *Daubert* agreed that the rule imposes a "gatekeeping responsibility" on the trial judge, who "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589.[2] The Court defined what the rule means by "scientific knowledge": "The adjective 'scientific' implies a grounding in the methods and procedures of science. Similarly, the word 'knowledge' connotes *more than subjective belief or unsupported speculation.*" *Id.* at 590 (emphasis added). An opinion qualifies as "scientific knowledge" only

---

[2] The trial court's duty to make a sufficient inquiry under *Daubert* exists regardless of any party's "request" for a hearing. *Oddi v. Ford Motor Co.*, 234 F.3d 136, 152 (3d Cir. 2000); accord, *In re TMI Litigation*, 199 F.3d 158, 159 (3d Cir. 2000) (order amending opinion), *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999), and *Hines v. Consolidated Rail Corp.*, 926 F.2d 262, 272 (3d Cir. 1991).

if it is "derived by the scientific method." *Id.* This requirement of "good grounds" for the opinion "establishes a standard of evidentiary reliability." *Id.* (footnote omitted). In making its determination, the trial court's "focus, of course, must be solely on principles and methodology, . . . ." *Id.* at 595.[3]

Beyond the requirement of reliability,[4] the evidence must be relevant within the meaning of F.R.E. 402 – *i.e.,* it must "'assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* at 591. The Court referred to this as the "helpfulness" standard, "which requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* It explained the reason for this requirement:

> That these requirements are embodied in Rule 702 is not surprising. Unlike an ordinary witness (citation omitted), an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation. (Citation omitted.) Presumably, this relaxation of the usual requirement of firsthand knowledge – a rule which represents 'a "most pervasive manifestation" of the common law insistence upon the "most reliable sources of information," (citation omitted) – is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.

*Id.* at 592.

For the evidence to be helpful, "[t]here must be a valid connection between the expertise in question and the inquiry being made in the case." *United States v. Velasquez*, 64 F.3d 844, 850 (3d Cir. 1995); see also *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Downing*, 753 F.2d at 1231, 1242; *United States v. Mathis*, 264 F.3d 321, 336 (3d Cir. 2001); *Perez*, 280 F.3d at 318. "[T]he possibility that admitting the evidence would overwhelm, confuse, or

---

[3] The Court has since clarified this statement by noting that "conclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *General Electric Company v. Joiner*, 522 U.S. 136, 146 (1997).

mislead the jury" is also part of the Rule 702 admissibility determination. *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 746 (3d Cir. 1994) (discussing *Downing*).[5]  For inability to meet its burden to satisfy the helpfulness requirement of Rule 702, the government's proposed opinion evidence in this case should be held inadmissible.

When faced with a proffer of opinion testimony, "the trial judge must determine at the outset, pursuant to Rule 104(a) (footnote omitted), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert,* 509 U.S. at 592 (footnote omitted).  Many different factors bear on the trial court's inquiry, and the Court acknowledged that it is impossible to compile "a definitive checklist or test." *Id.* at 593.  But the Supreme Court laid out the factors and considerations that will ordinarily apply.

- Testability: whether the scientific knowledge at issue "can be (and has been) tested."
- Publication: "whether the theory or technique has been subjected to peer review and publication."
- The error rate for the scientific technique, whether known or potential.
- General acceptance within the relevant scientific community.

*Id.* at 593-94.

The Third Circuit has recently held – while affirming a district court's order excluding a government expert – that Rule 702 has "three major requirements: (1) the proffered witness must be an expert, *i.e.,* must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge, [*i.e.,* reliability]; and (3) the expert's testimony must assist

---

[4] It is also referred to by the Court as a requirement of "trustworthiness."  509 U.S. at 590 n. 9.

[5] Though Rule 702 sets a "liberal standard for admissibility," *Downing*, 753 F.2d at 1230, when the proponent is the government in a criminal case, the Third Circuit has recognized the "possible tension" between the defendant's fair trial rights and the policy of the federal rules.  *Id.* 1235-36.

the trier of fact, [*i.e.,* fit].  (Citation omitted.)"  *United States v. Schiff,* 602 F.3d 152, 172 (3d Cir. 2010).  It has also identified four factors – in addition to the four enumerated by the Supreme Court in *Daubert* – that a district judge may use in evaluating a proffer of opinion testimony.  These include:

- ¬ The existence and maintenance of standards controlling the technique's operation.
- ¬ The relationship of the technique to methods which have been established to be reliable.
- ¬ The witness's qualifications.
- ¬ The "non-judicial" uses to which the method has been put.

*Heller v. Shaw Industries*, 167 F.3d 146, 152 (3d Cir. 1999).  *Accord, Kannankeril v. Terminix International, Inc.,* 128 F.3d 802, 806 (3d Cir. 1997).  The proponent of the evidence must demonstrate by a preponderance of the evidence that the opinion testimony is reliable within the meaning of *Daubert* and its progeny.  *Kannankeril,* 128 F.3d at 807.

The government's intended opinion testimony fails on all three legal requisites: The witness is not qualified; the evidence is not reliable; and there is no "fit" with the facts of the instant case.

### **Qualifications**

Dr. Edelman is simply not qualified to render an "expert" opinion on any issue relevant to this case.  She received her Psy.D. in clinical psychology (from Philadelphia College of Osteopathic Medicine) six years ago.  She is not a licensed psychologist authorized under state law to diagnose disorders. She holds no faculty positions.  She has not published any books, nor has she contributed any articles to scholarly or peer-reviewed journals.  Her therapeutic work is done at a place called Triune Wellness,  which describes itself as offering "chiropractic[,] counseling[,] coaching[,] clinical psychology[,] massage[,]  yoga[,] pilates[,] acupuncture[,]

nutrition [and] skin care."[6]  The website for Triune includes a blog that provides a window into Dr. Edelman's professional endeavors.  Recent posts include the following: "How Sugar Makes You Fat"; "Red Meat Not Bad For You After All"; and "Ab Workouts for Mom."  *See* http://triune325.blogspot.com/ .

   Edelman's *c.v.* includes fifteen "media references," including a sports reporter and a former producer for Court TV.[7]  It also lists twelve different "media appearances" and eleven printed articles.[8]  Among the topics on which she has opined for the popular media are online bullying; sports psychology; domestic abuse; guilt and the working woman; mothers and grandmothers raising children together;  mothers raising children with a "work-obsessed" husband; kidnapping; disciplining children; finding happiness in midlife; handling anger; health and wellness; why women live longer than men; divorce; teaching children the "real meaning" of money; developing independence as a consumer;  and conquering stress to "empower your life."  As just one example, she appeared on the *Today* show in 2007 as an expert on the "six secrets" that one "should keep from your mate."  *See* http://today.msnbc.msn.com/id/18661795 (this appears on the resume renamed as "Secrets in Relationships").  Among her "expert" *apercus* on that occasion was to advise women not to reveal details about their sex lives to their friends, because it might tempt them to "seduce your man."[9]

---

[6] This information appears on the website for Triune: www.tri-une.com .

[7] The resume indicates that that individual is now working for the SciFi Channel.

[8] Some of these print articles were written by Dr. Edelman; others are interviews of her.

[9] Dr. Edelman's resume also indicates that she is the media spokesperson for IKEA's "Declare Your Independence" campaign.  While the defense is ignorant as to what she is exhorting people to declare their independence from, advertising work for a "big box" assemble-it-yourself discount furniture retailer does not suggest expertise in the field of psychology generally or of child sexual abuse in particular.

It is apparent that Dr. Edelman fancies herself an expert on a breathtakingly wide range of topics, some of them completely unrelated to the field of psychology.  Such breadth necessarily produces a lack of depth in any individual area.  The defendant submits that Dr. Edelman's principal expertise lies in attracting the attention of the media.

Because the "question of admissibility only arises if it is first established that the individuals whose testimony is being proffered are experts in a particular scientific field," Edelman's lack of qualifications is, by itself, a sufficient basis for excluding the testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 43 F.3d 1311, 1315 (9th Cir. 1995) (opinion on remand).  As noted by the Ninth Circuit following the remand by the Supreme Court, "something doesn't become 'scientific knowledge' just because it's uttered by a scientist . . . ." *Id.* at 1315-16.  To find that Edelman is qualified to give the "expert" testimony outlined by the prosecution would be tantamount to a ruling that anyone with a doctorate in psychology is qualified to opine from the witness stand on any aspect of human behavior.  It is manifest that such a ruling would be contrary to Rule 702 and the case law interpreting it.

### Reliability

In order to evaluate the reliability of the witness's methodology, the Court must be able to review the bases for her opinions.  As already noted, the government has failed to comply with Rule 16's injunction to disclose that information.  The defense believes that the explanation for this dereliction is simple: Dr. Edelman apparently bases her opinions on nothing but anecdotal experience from her own (rather limited) clinical education and practice.  There is thus no underlying evidence for the government to cite.  She has not conducted any research since receiving her degree. Her doctoral dissertation – *A Comparison of Attitudes About Aggression, Sexuality and Social Support in the Peer Relationships of Sexually Abused Female Adolescents* –

does not provide any basis for the testimony sought by the government.

Absent a controlled, longitudinal study of verified victims of child abuse, there is no reliable basis for the witness to state that the "vast majority" of victims delay reporting the abuse, report it long after it happened, or refuse to discuss it further due to the incredulity of their listeners.  Such a statement would be scientifically valid only if there were data showing both the percentage of victims who engage in those behaviors and the percentage of delayed reports that turn out to be false.  Similarly, statements that certain behaviors occur "often" or "frequently" are not scientific when there are no data provided about the percentages involved.  Even more questionable is whether any data or research that may exist have been shown to have cross-cultural validity when applied to youth who grew up in Russia.  Dr. Edelman's belief that something is "well-known" to those working in the field of child sex abuse is no less anecdotal and devoid of any indicia of accepted scientific methodology.

Not only is Dr. Edelman apparently relying exclusively on anecdotal experience, even that source lacks scientific reliability for drawing general conclusions.  When a counseling client describes childhood abuse to her, surely she does not investigate to determine the truth of the accusation.  Undoubtedly, as a counselor, she accepts the allegation at face value.  In short, her "expert" conclusions appear to be based only on the self-reported experiences of her clients and on what she has heard from colleagues.

Opinions based only on anecdotal reports from six years of therapeutic experience do not constitute "scientific knowledge" within the meaning of *Daubert.*  Even more troubling in this case is the disclosure by the government that Dr. Edelman herself is a past victim ("survivor") of child sex abuse.  The fact that the government mentioned this in its letter suggests that it intends to elicit this information from Dr. Edelman on the stand, or to force the defense to do so in order

to reveal the witness's bias to the jury. That information is not relevant or probative; the effect of the government's eliciting it would be principally to generate sympathy from the jury. It would also likely suggest to the jurors that Edelman's combination of clinical and personal experience with the subject of abuse gives her additional insight that another "expert" would not have. Sorting out any such suggestion would be substantially more confusing to a jury than probative and would require opening up a collateral line of inquiry into its significance (or accuracy) that would, at best, lead to a substantial waste of time. Not knowing the bases for Dr. Edelman's proposed opinion testimony, we must conclude that the government believes that Dr. Edelman's personal experience as a victim of abuse is relevant and helpful to the jury. While evidence of this sort might help the government's case by generating sympathy, it has nothing to do with the *Daubert* requirement of reliability, undermines the objectivity that is essential to truly "helpful" expertise, and has no proper place in the trial of the allegations made by the complainant in this case.[10]

The Ninth Circuit post-remand opinion in *Daubert* is especially instructive on the issue of reliability. The court of appeals ruled that, even under the Supreme Court's new standard for determining the admissibility of opinion evidence, the expert testimony on the cause of the minor plaintiffs' birth defects had been properly excluded by the trial judge. It noted that none of the proffered experts in that case had conducted any independent research into the correlation between the use of the drug Bendectin by pregnant women and the occurrence of birth defects in their children. Further, none of the experts based his testimony on preexisting or independent

---

[10] The defense does not believe that this subject is relevant, but if this "personal experience" evidence is admitted, this evidence would also have to be tested by investigation into the details of the claimed abuse. No one should be interested in conducting that investigation, and we do not believe that it is proper.

research. When no research has been undertaken or relied on, "the party proffering [the opinion testimony] must come forward with other objective, verifiable evidence that the testimony is based on 'scientifically valid principles.'" 43 F.3d at 1318-19. That evidence may be proof that the witness's conclusions have survived scientific scrutiny through peer review and publication. The Court called independent research and peer review the two principal ways that the proponent of the testimony can satisfy its burden under Rule 702.

> Where such evidence is unavailable, the proponent of expert scientific testimony may attempt to satisfy its burden through the testimony of its own experts. For such a showing to be sufficient, the experts must explain precisely how they went about reaching their conclusions and point to some objective source – a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like – to show that they have followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in their field. (Citation omitted.)

43 F.3d at 1318-19. The Court found that none of the proffered experts satisfied any of those criteria and held the testimony inadmissible.

The same conclusion is compelled here. The government has provided no methodology for the Court to review. Edelman's testimony is precisely the type of *ipse dixit* condemned by the Supreme Court in *Joiner*.[11] Indeed, it is very revealing that the prosecution has not been able to articulate the subject matter on which the witness is an expert, stating only that she is an expert and summarizing what she would say on the stand. Opinion testimony is admissible

> so long as the process or technique the expert used in formulating the opinion is reliable. (Citation omitted.) In order for the expert testimony to be 'reliable,' we have required that the testimony be based on the 'methods and procedures of science,' rather than on 'subjective belief or unsupported speculation.' (Citation omitted.)

*Kannankeril,* 128 F.3d at 806. All of Edelman's proposed testimony consists of subjective belief and speculation and should be excluded by the Court.

---

[11] *Supra,* fn. 3.

- 15 -

**Fit**

The government's proposed evidence also fails on the third criterion – that of "fit." It is not probative of any of the questions to be resolved by the jury and therefore cannot help them to resolve any facts at issue. A description of behavior observed by Edelman in other putative victims of sexual abuse does not make it more or less likely that the defendant committed any of the acts with which he is charged. Nor is the complaining witness a minor, who might not be able to articulate or understand his own motivations and actions. He is a grown man who is capable of explaining what he did and didn't do, and why he did or didn't do it.

The government suspects that the defense will argue that the long delay between the alleged offenses and the complainant's reporting of them raises serious credibility issues. The reality is obvious – the prosecutors seek to present Dr. Edelman's testimony as evidence that their complaining witness is telling the truth. But the opinion testimony does not "fit" the purpose to which it will be applied. The fact that some unknown percentage of actual victims of sexual abuse may long delay reporting the event does not make it more or less likely that this particular witness is telling the truth in this particular case. It is simply a form of vouching for the witness and bolstering his questionable credibility. And it is a particularly dangerous and impermissible form of vouching, as it is bears the impressive but undeserved imprimatur of "science." For all these reasons, a Rule 702 analysis calls for exclusion of Dr. Edelman's proposed testimony.

3.   *The Government's Evidence Should in Any Event Be Excluded Under Rule 403.*

Even should the Court find that the proffered testimony meets the criteria of Rule 702, it should be rejected under F.R.E. 403, which provides for the exclusion of evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

issues, or misleading the jury . . . ." As the Third Circuit noted in *In re Paoli R.R. Yard PCB Litigation*, *supra*, "Rule 403's balancing test of the probative against the prejudicial value of evidence has a special role in cases involving expert witnesses." 35 F.3d at 747, citing *Daubert*. As already demonstrated, the probative value of the proposed Edelman evidence is minimal at best, while it carries an enormous danger of unfair prejudice and confusion.

Anecdotal evidence from an "expert" who speaks of what "often" and "frequently" happens is likely to mislead the jury into believing that there are actual scientific data to support the witness's statements – even if no such data are cited. The danger of prejudice is greatly exacerbated in this case by the witness's claimed personal experience as a "survivor" (victim). If Dr. Edelman mentions that fact, it could generate enormous sympathy and passion on the part of the jurors. It may also lead them to conclude that she has a unique perspective that makes her more "expert" than other professionals would be. Even if she is not allowed to testify to the personal experience, it will undoubtedly lend an emotional aspect to her testimony that is inconsistent with the objective, professional affect that is typically displayed by expert witnesses, or require the defense to bring out the same fact and explore it in depth, as evidence of bias.

All told, the Court should exercise its discretion under Rule 403 – as well as under Rule 702 – to exclude the proffered opinion testimony of Sherri Edelman, Psy.D.

    4.    *Use of the Word "Expert"*

If the Court decides to deny this motion and admit the Edelman testimony – in whole or in part – the defendant requests that neither the Court nor the government refer to the witness in front of the jury as an "expert." Rule 702 was amended in 2000 in response to *Daubert.* A lengthy Advisory Committee Note attends that amendment. It specifically cautions against the use of the word "expert".

> The amendment continues the practice of the original Rule in referring to a qualified witness as an 'expert.' This was done to provide continuity and to minimize change. The use of the term 'expert' in the Rule does not, however mean that a jury should actually be informed that a qualified witness is testifying as an 'expert.' Indeed, there is much to be said for a practice that prohibits the use of the term 'expert' by both the parties and the court at trial. Such a practice 'ensures that trial courts do not inadvertently put their stamp of authority' on a witness's opinion, and protects against the jury's being overwhelmed by the so-called "experts".'

Note of the Evidence Advisory Committee (2000) concerning proposed amendment to Rule 702, in *Federal Criminal Code and Rules (2010 Edition),* West Publ., at 349 (internal citation omitted). In managing this trial, the Court should follow this insightful suggestion and disallow any use of the terms "expert" or "expert testimony" before the jury.

### Conclusion

The defendant requests that the Court schedule a hearing *in limine* pursuant to F.R.E. 104 to determine the admissibility of Dr. Edelman's testimony. At the conclusion of that hearing, the Court should order the complete exclusion of her testimony in accordance with Rule 702 and *Daubert*, and well as under Rule 403.

Respectfully submitted,
***DUFFY & GREEN***

Dated: September 12, 2010      By:   *s/ Joseph P. Green, Jr.*
138 West Gay Street
West Chester, PA 19380
610-692-0500
jpgreen@duffygreen.com

*Of counsel:*   Peter Goldberger, Esquire
Cheryl D. Stein, Esquire

## *NOTICE OF SERVICE*

Electronic service of the Notice of Electronic Case Filing constitutes service of the filed document to all parties hereto and shall be deemed to satisfy the requirements of Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure and Rule 49 of the Federal Rules of Criminal Procedure.