IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 10-29 |
| | : | |
| KENNETH SCHNEIDER | : | |

## ORDER

AND NOW, this 6th day of February, 2018, it is ORDERED Defendant Kenneth Schneider's Motion for Resolution of Motion to Recuse (Document 318) is GRANTED.

It is further ORDERED that, upon consideration of Defendant Kenneth Schneider's Motion for Recusal, the Government's opposition thereto, and Schneider's reply, the Motion for Recusal (Document 305) is DENIED.[1]

---

[1] On October 1, 2010, a jury convicted Defendant Kenneth Schneider of one count of traveling in foreign commerce with the intent to engage in illicit sexual conduct with a minor between the ages of 12 and 16, in violation of 18 U.S.C. § 2423(b). Schneider was also convicted of one count of transporting an individual in foreign commerce with the intent that such individual engage in criminal sexual activity, in violation of 28 U.S.C. § 2421, but after trial, this Court granted Schneider's motion for a judgment of acquittal as to that count. On December 1, 2011, this Court sentenced Schneider to 15 years of incarceration. After his conviction and sentence were affirmed on appeal, Schneider filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 on February 28, 2017. Six weeks later, on April 10, 2017, Schneider filed the instant motion for recusal, asserting this Court should recuse itself from considering his § 2255 motion based on (1) statements the Court made during Schneider's sentencing hearing, which Schneider contends demonstrate antagonism toward him, and (2) the Court's personal and professional relationship with Schneider's lead trial counsel, which Schneider maintains calls into question the Court's ability to impartially evaluate his claims that trial counsel was ineffective.

      Schneider moves for recusal pursuant to 28 U.S.C. § 455(a) and the Due Process Clause of the Fifth Amendment. Section 455(a) requires a judge to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." The standard for recusal under § 455(a) is objective. *See Liteky v. United States*, 510 U.S. 540, 553 n.2 (1994) (noting § 455(a) "deals with the *objective appearance* of partiality"). Recusal is required if "a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." *In re Kensington Int'l Ltd.*, 353 F.3d 211, 220 (3d Cir. 2003); *see also Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) ("The standard for recusal is whether an objective observer reasonably might question the

judge's impartiality."). In contrast, the appearance of bias on the part of a judge, without more, does not amount to a due process violation. *See Johnson v. Carroll*, 369 F.3d 253, 262-63 (3d 2004). Rather, the Due Process Clause requires recusal "when, objectively speaking, 'the probability of actual bias on the part of the judge . . . is too high to be constitutionally tolerable.'" *Rippo v. Baker*, 137 S. Ct. 905, 907 (2017) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). While a judge "should grant [a] recusal motion where there are sufficient facts to show that a reasonable person would question the judge's impartiality, a judge also has an affirmative duty not to recuse himself or herself in the absence of such proof." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 872 F. Supp. 1346, 1349 (E.D. Pa. 1994), *aff'd* 107 F.3d 1026 (3d Cir. 1997).

Schneider's first argument for recusal is based on statements this Court made at his sentencing hearing. Specifically, Schneider argues the Court's use of the words "evil" and "monster" at sentencing demonstrates "an antagonism toward [him] that, at the very least, creates the appearance of bias that would impair the Court's ability to fairly consider the collateral challenge that [he] makes to his conviction and sentence." Pet'r's Mot. for Recusal 8. The Court disagrees.

To warrant recusal for bias under § 455(a), "a case generally must involve apparent bias deriving from an extrajudicial source, meaning something above and beyond judicial rulings or opinions formed presiding over the case." *United States v. Ciavarella*, 716 F.3d 705, 720 (3d Cir. 2013) (quoting *United States v. Bergrin*, 682 F.3d 261, 282 (3d Cir. 2012)). A trial judge is not required to abstain from forming opinions about parties based on the evidence presented during the proceedings before him, and such opinions generally are not a basis for recusal unless they are "so extreme as to display clear inability to render fair judgment." *Liteky*, 510 U.S. at 551. As the United States Supreme Court has recognized,

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task.

*Id.* at 550-51. Rather, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings," constitute a basis for a bias or partiality motion only if "they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 555.

The remarks that Schneider contends warrant recusal were made by the Court at sentencing while addressing "the nature and circumstances of the offense and the history and characteristics of the defendant," factors a court is statutorily required to consider in imposing sentence. *See* 18 U.S.C. § 3553(a)(1); *see also United States v. Pearson*, 203 F.3d 1243, 1278 (10th Cir. 2000) (noting it is a "court's prerogative, if not its duty, to assess the defendant's character and crimes at sentencing, after the defendant's guilt has been decided"). In commenting on the seriousness of the offense of conviction, the relevant conduct to that offense, and the devastating impact of that conduct on the victim, the Court expressed the view that "a person who manipulates a young twelve-year-old boy into becoming his sex toy for six years" and who then "disposes of this young adult as if he was trash, once he was no longer a little boy" is "a monster" and "an evil man." Hr'g Tr. 8, Dec. 1, 2011; *see also id.* at 11, 13. As is apparent

from the sentencing hearing transcript, the Court's comments were based entirely on the evidence of sexual abuse introduced at trial and contained in the Presentence Investigation Report. Although strongly worded, the Court's comments do not reflect the kind of deep-seated antagonism toward Schneider that would preclude the Court from fairly assessing his § 2255 motion. *See Liteky*, 510 U.S. at 555 (holding "judicial remarks . . . that are critical or disapproving of, or even hostile to, . . . the parties . . . ordinarily do not support a bias or partiality charge"); *In re Shusterman*, 394 F. App'x 888, 890 (3d Cir. 2010) (holding a judge's comment during a plea hearing that the defendant was "one of the most specially-talented liars that I've ever met in my life" did not require the court to recuse itself from considering the defendant's § 2255 motion); *Rhoades v. Henry*, 598 F.3d 511, 518-19 (9th Cir. 2010) (holding a judge's statements that a defendant "was 'morally vacant and totally devoid of conscience,' had a propensity to commit murder, constituted a continuing threat to society, and had committed an offense that was 'extremely wicked and vile[] [and] shockingly evil,'" made in the course of sentencing the defendant in one murder case, did not require the judge to recuse himself from sentencing the defendant in a separate murder case three weeks later); *Pearson*, 203 F.3d at 1252, 1277-78 (holding a judge's comments at sentencing, based on information learned during trial, that the defendant was, inter alia, "a predator, a manipulator who preys on women," "repulsive," and a "poster boy for a life sentence in a federal penitentiary" did not display the kind of "deep-seated antagonism that would make fair judgment impossible"); *cf. United States v. Antar*, 53 F.3d 568, 573-79 (3d Cir. 1995) (holding recusal was required where the judge stated at sentencing that his "object" in the case "from day one" was to get back to the public money that was taken from it as a result of the defendant's fraud and made other comments suggesting the judge had an improper goal in a criminal case), *abrogated on other grounds by Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001).

  *United States v. Ciavarella*, 716 F.3d 705 (3d Cir. 2013), the case on which Schneider primarily relies, does not hold to the contrary. In that case, the Third Circuit Court of Appeals considered whether a judge was required to recuse himself as a result of letters he had sent to members of the public expressing opinions about an ongoing criminal case in which the defendant before him, a former state court judge, was charged with committing juveniles to detention centers in exchange for kickbacks from the builder and operator of the centers as part of a "Kids for Cash" scheme. In responding to a letter from a member of the public urging the judge not to impose the stipulated sentence contained in a plea agreement that the judge ultimately rejected, the judge expressed sympathy with the writer's view that the stipulated sentence was "'not severe enough punishment'" for the defendant, who had "'committed the most serious crime against the people' by using [his] courtroom[] as 'a business for profit at the expense of children.'" *Id.* at 723 (citation omitted). Although troubled by the judge's expression of his thoughts on the defendant and his conduct, the Court concluded the letter did not require recusal, in part because the judge qualified his opinions with statements that his personal beliefs would not guide his rulings. Noting that this Court did not employ any similar qualifying language at sentencing here, Schneider argues *Ciavarella* supports recusal in this case. This argument, however, ignores the substantial differences in the context in which the opinions were expressed in the two cases. Unlike the statements of opinion in *Ciavarella*, which were made in a letter to a member of the public before the judge had decided whether to accept a plea agreement that included a stipulated below-Guidelines sentence, the statements at issue in this

3

case were made at sentencing, a point in the proceedings when a judge is required to assess a defendant's conduct and characteristics.

Schneider's second argument for recusal concerns what Schneider characterizes as this Court's "close personal relationship" with his lead trial counsel, Joseph Green, Esq. Schneider maintains that while this relationship raised no recusal concerns at trial, recusal is now warranted because the § 2255 motion raises ineffective assistance of counsel claims and will therefore require the Court to assess Green's performance and, possibly, his credibility. Again, the Court disagrees.

As this Court disclosed to the parties at the outset of this case, the Court has known Green since the early 1980s, when the Court and Green overlapped for a time in the Chester County Public Defender's Office. The Court continued to maintain a friendship with Green after he left the Public Defender's Office to enter private practice, and in 1997, when the Court ran for election to the Court of Common Pleas of Chester County, Green served as one of several members of the Court's campaign committee. Since that time, however, the Court's contact with Green has waned. In the past ten or more years, the Court has seen Green only rarely at larger social functions, and has not maintained an ongoing social relationship with him. Schneider's suggestion that this Court currently has a close personal relationship with Green is therefore inaccurate.

Given the passage of at least a decade since this Court last had any kind of regular contact with Green—and more than two decades since Green participated in this Court's campaign for state judicial office—the relationship is not one that would lead a reasonable observer to question the Court's ability to impartially evaluate Schneider's claims that Green provided ineffective representation at trial. *See In re Bellon*, 667 F. App'x 362, 363 (3d Cir. 2016) (holding a judge's past friendship with a district attorney did not require recusal in a habeas case where the judge and the district attorney had not been close friends in almost 20 years and had not spoken in five years); *United States v. Cole*, 293 F.3d 153, 164 (4th Cir. 2002) (holding a judge was not required to recuse himself from a criminal case in which one of the government's witnesses was the son of the judge's deceased godparents where the judge had not had any contact with the witness for over ten years); *United States v. Lovaglia*, 954 F.2d 811, 815-17 (2d Cir. 1992) (holding a judge's prior business and social relationships with the victims of a RICO scheme did not require the judge's recusal at sentencing where the judge's relationships with the victims had "drifted away and ceased" seven or eight years prior to sentencing and gave him no outside knowledge of any relevant facts); *cf. United States v. DePaoli*, 41 F. App'x 543, 550 (3d Cir. 2002) (holding a judge was not required to recuse himself from a criminal case in which one of the witnesses belonged to the same church as the judge and participated in church activities with him, where the judge and the witness did not have a close personal relationship); *Mass. Sch. of Law*, 107 F.3d at 1043 (citing the passage of time as a factor relevant to whether a judge's activities or relationships create an appearance of bias).

Nor do the cases cited by Schneider hold otherwise. In *Hadler v. Union Bank & Trust Co. of Greensburg*, 765 F. Supp. 976, 978-80 (S.D. Ind. 1991), a judge recused himself from presiding over a bench trial at which the judge's "long-time personal friend" would be a pivotal witness on the issue of liability, where the friend also had a financial stake in the case as an officer and stockholder of the defendant company (which stood to lose a significant sum of money). Characterizing the recusal question as a close one, the judge noted that neither his long-

4

BY THE COURT:


       /s/ Juan R. Sánchez
      Juan R. Sánchez, J.

---

time friendship with the witness nor the fact that he would be required to evaluate his friend's credibility was sufficient to warrant recusal. Rather, those factors, in combination with his friend's "very specific financial interest" in the outcome of the case made recusal appropriate. *See id.* at 979. That same confluence of factors is not present here, as this Court's relationship with Green is more attenuated than in *Hadler*.

Schneider's citation to cases addressing a judge's recusal obligation in matters involving the judge's campaign manager is similarly unavailing. In *State v. Stockert*, 684 N.W.2d 605, 613, 615 (N.D. 2004), the North Dakota Supreme Court recognized that a member of a judge's campaign committee "is not perpetually barred from appearing before [that] judge," holding that whether recusal is required based on a person's involvement in a judicial campaign turns on a number of factors, including "[w]hether the campaign is underway or how recently it ended" and "[w]hether there is an ongoing relationship between the person and the judge." In *Doyle v. State Commission on Judicial Conduct*, 17 N.E.3d 1127, 1129-31 (N.Y. 2014), the court held a judge was required to recuse herself from matters in which an individual with a leadership role in her then-ongoing campaign for election to judicial office had appeared as counsel, but that case is distinguishable. Here, the campaign is not only not ongoing, but was over 20 years ago.

The remaining two cases cited by Schneider are inapposite. In *Arcement v. Cruz*, 836 So. 2d 314, 315 (La. Ct. App. 2002), the Louisiana Court of Appeal applied the rule that "[o]nce a judge recuses himself or herself from hearing a case, the judge is thereafter precluded from hearing that case ever again" to a case from which the trial judge had recused himself because counsel for the relator in the case was the judge's opponent in an ongoing judicial election and the relator was the opponent's campaign manager. And in *Disaster Restoration Dry Cleaning, L.L.C. v. Pellerin Laundry Machinery Sales Co.*, 927 So. 2d 1094, 1101 (La. 2006), the Louisiana Supreme Court observed, in remanding a case, that the fact that counsel for one of the parties in the case was the judge's campaign finance manager "may warrant [the judge's] recusal or a hearing to determine if a ground for recusation exists." These cases do not support the proposition that recusal is automatically required because a member of a judge's former campaign committee may be a witness in a matter before the judge some two decades after the judge's campaign concluded.

Because neither this Court's statements at Schneider's sentencing hearing, nor the Court's prior relationship with his trial counsel provide reasonable grounds to question the Court's ability to impartially evaluate Schneider's § 2255 motion, recusal is not warranted under either § 455(a) or the Due Process Clause. Accordingly, the motion for recusal is denied.